William Darryl BLAKEMORE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 15, 1973.

**232**

William H. Allison, Jr., Ellen Mosen James, Donna Morton Maier, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

The appellant, William Darryl Blakemore, appeals from a judgment entered in accordance with a jury verdict in which he was found guilty of armed robbery, the offense denounced by KRS 433.140. His punishment was fixed at ten years' imprisonment on each of the four counts contained in the indictment. The trial judge directed that the sentences were to be served concurrently, with exception of the last count on which the court suspended sentence on condition that appellant remain on good behavior for a period of five years after his release from prison.

At approximately 3:00 a. m., on May 5, 1972, an armed robbery took place at Laird's Tourist Home, which is located on South 15th Street in Louisville, Kentucky. At the time the robbery occurred, a pre-Derby-day party was in progress at Laird's. It was indicated that approximately seven persons took part in the robbery with several of them brandishing weapons, including a .38 caliber pistol and a sawed-off shotgun. The participants of the party at Laird's were ordered into the barroom and told to hand over all of their valuables, including watches, rings, jewelry, money, etc. They were also made to take off their clothing and heap it in a pile in the middle of the floor. Approximately thirty minutes later, the robbers left Laird's with their loot.

The appellant, Blakemore, and six others, were subsequently indicted for this robbery. At the close of the prosecution's evidence, charges against five of the defendants were dismissed by directed verdicts for lack of evidence. The case was submitted to the jury on the four counts of armed robbery against Blakemore and a codefendant, Ben Simmons. Five other counts against the latter two defendants were dismissed. In the same jury verdict wherein Blakemore was convicted, Simmons was acquitted.

At the trial, seven witnesses testified for the prosecution but only one, Ella Mishaw, was able to identify any of the defendants. Ella Mishaw made positive identification of the appellant, Blakemore. Although she did indicate that she had seen some of the other defendants at Laird's during the course of the evening, she could not state that she saw any of them other than Blakemore during the robbery.

Blakemore asserts that the eye-witness identification by Ella Mishaw was inadmissible because her in-court identification was tainted by overly suggestive identification procedures previously used by the police. The record reveals that the only possibly suggestive police procedures were di-

rected to witness J. J. Williams who undertook to make an in-court identification of the acquitted codefendant Simmons.

■ Blakemore appears to argue that because Miss Mishaw was present when alleged suggestive procedures were directed to witness Williams, her identification must have been tainted by the same method. The record demonstrates, however, that the defense made no effort to cross-examine witness Mishaw concerning possible taint of her in-court identification. Blakemore failed to object to Miss Mishaw's testimony at the time it was received on the ground it was tainted by impermissively suggestive pretrial identification procedures, and we are unable to declare prejudicial error in the admission of Miss Mishaw's testimony.

■ Blakemore's next contention is that the trial judge committed prejudicial error when he denied appellant's motion to suppress evidence. A police officer testified that he found a shotgun on a bedroom floor of a house in which the appellant was arrested. The appellant objected to the introduction of the shotgun into evidence on the ground that the house was searched pursuant to an invalid search warrant supported by a faulty affidavit. According to the record, no hearing on the motion to suppress was ever requested by the appellant. Appellant failed to present any evidentiary material by affidavit, testimony at trial, or by way of avowal, concerning the factual basis for his motion to suppress which merely made a conclusionary statement that the search was made pursuant to an invalid warrant supported by an insufficient affidavit. In view of the state of the record, we cannot characterize the trial judge's ruling as erroneous.

Cf. Lumpkins v. Commonwealth, Ky., 425 S.W.2d 535 (1968).

■ The appellant next complains that the testimony of a police officer in regard to the legal length of the sawed-off shotgun (which was in the possession of appel-

lant at the time of his arrest), should not have been admitted into evidence. The basis of this complaint appears to be that this constituted impermissible evidence of an unrelated crime and was, therefore, prejudicial. The record contains numerous references to weapons used in the armed robbery. There was testimony indicating that a sawed-off shotgun was one of those weapons. The testimony also indicated the sawed-off shotgun was in appellant's possession and that this shotgun was found in the apartment where appellant was arrested. We think the passing reference in the testimony to the fact that the shotgun was of an illegal length did little more than identify it from a shotgun of regular length. The fact that its possession was a violation of federal law was neither stated nor emphasized. The testimony was merely that it was of an illegal length. We are not convinced the admission of this testimony constituted error, but if it was error it was surely harmless when viewed in the context of the circumstances.

■ Blakemore also argues that the Commonwealth's attorney who prosecuted the case was guilty of misconduct to the extent that his right to a fair trial was prejudicially affected. The incident that gave rise to the complaint took place, for the most part, during the examination of witness Burns. Miss Burns was undertaking to testify against a former neighbor and friend, codefendant Baines, in whose favor the trial judge sustained a motion to dismiss. Miss Burns testified that defense counsel had, prior to trial while interviewing her, accused her of being a "disgrace to the black people for testifying." At this point there was a meeting in chambers during which the defendant's counsel gave an explanation of what transpired at this interview with witness Burns. The explanation was apparently sufficient to satisfy the trial judge that there had been no substantial wrongdoing on the part of defense counsel.

A reading of the record indicates that although the prosecution had to refresh

Miss Burns' memory, there was no repeated interrogation of the witness as appellant contends. It is significant that in his brief appellant makes no specific page references to the claimed "repeated interrogation" of witness Burns, and a careful examination of the record reveals no such harmful or prejudicial conduct.

It is apparent that part of Miss Burns' trouble while on the witness stand is attributable to her nervousness at being compelled to testify against a former neighbor and friend. Appellant asserts that the Commonwealth attempted to attribute her fright to intimidation on the part of defense counsel. Close examination of the record simply does not support this argument.

The other claimed misconduct by the prosecutor was a statement made in his final argument to the effect that witness Mishaw was deserving of honor because of her courage in testifying despite possible threats to her life. Defense counsel objected at this point. The court stated to the jury: "There is no evidence to that." The prosecutor replied: "I said all the possible threats." The trial judge then admonished: "Stay within the record of the evidence." The prosecutor obeyed the admonition of the trial court. After this one objection which was sustained by the court with admonition to the prosecutor, appellant failed to move for a mistrial and appeared satisfied by the admonition the trial court gave to the jury. In any event, we regard the isolated statement of little or no significance and any improper effect was cured by the definite and direct admonition of the trial judge.

■ Appellant claims that the grand jury indictment against him should have been quashed because an identifiable class of persons was systematically and intentionally excluded from grand jury service. He also asserts that KRS 29.075 should be declared unconstitutional. In this connection he makes the additional argument that

he was denied due process because the trial judge refused to afford him a hearing on his motion for quashing the indictment on the basis just stated. Again we are confronted with a record which conclusively demonstrates that all appellant did was to make a conclusionary allegation without statement of any fact with the apparent hope that the trial judge would conduct some sort of discovery type hearing to ascertain whether the conclusion was sustainable or not. Although the conclusionary accusation is made that the jury selection process resulted in systematic exclusion of black persons, young persons, and those from lower socioeconomic classes, there is not one fact alleged to sustain any such conclusion. We cannot presume known methods of jury selection are impermissible absent factual allegations on which a hearing could be based. See Tinsley v. Commonwealth, Ky., 495 S.W.2d 776 (1973).

■ In Splunge v. Commonwealth, Ky., 487 S.W.2d 925 (1972), this court considered the jury selection system in Jefferson County, Kentucky, and the effect of KRS 29.075. In that case the proof indicated that 13.8% of the population of Jefferson County was black and that 9.6% of the owners of real property were black. In Splunge we cited the language of the Supreme Court of the United States in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), to the effect that neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. The age, color, and sex of the jury members were available to defendant's counsel. He failed to make a single factual allegation that would support an inquiry concerning systematic and constitutionally impermissible exclusion in the jury selection process pursuant to KRS 29.075.

■ The next attack advanced by appellant is that it was prejudicial error to deny him a preliminary hearing. He was directly indicted by the grand jury prior to the

date which had been set for a preliminary hearing. This court has consistently held that when an indictment results from direct submission of evidence to a grand jury, there is no cause for or right to an examining trial and the failure to conduct an examining trial is not erroneous. Jenkins v. Commonwealth, Ky., 477 S.W.2d 795 (1972); Pankey v. Commonwealth, Ky., 485 S.W.2d 513 (1972).

The final allegation of error is that the evidence was insufficient to warrant submission of the case to the jury. Appellant asserts that the trial judge should have directed a verdict of acquittal in his case. The prosecution witness, Ella Mishaw, made a positive identification of appellant, both in her direct testimony and again on cross examination. When all of the evidence is considered, it is clear that the trial judge did not err in submitting appellant's case to the jury for its evaluation. We certainly cannot say that the prosecution's evidence failed to incriminate the appellant or that it was wholly insufficient to show guilt. The jury's verdict cannot be regarded as contrary to the evidence. We find no error in this aspect of the case. See Bradley v. Commonwealth, Ky., 465 S.W.2d 266, 267 (1971).

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.